

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Maurice R. Bullock
County Attorney
Pecos County
Fort Stockton, Texas

Dear Sir:

Opinion No. O-3801
Re: Is it lawful for the commis-
sioners' court to employ a
"Special livestock deputy"
whose duties shall be con-
fined to protecting livestock
in Pecos County from theft?

Your letter of July 17, 1941, requesting an
opinion of this department on the above stated question
has been received.

We quote from your letter as follows:

"I respectfully request your opinion as
Attorney General in answer to the following
question:

"Is it or is it not lawful for the Com-
missioners' Court of Pecos County to employ
a 'special livestock deputy, whose duties
shall be confined to protecting livestock
in Pecos County from theft'?

"STATEMENT OF FACTS

"According to the last Federal census
Pecos County has slightly over 8,000 pop-
ulation. The county has four Justice Pre-
cincts. The Sheriff has three deputies in
Fort Stockton, the county site, and one
deputy in each of the other Justice Pre-
cincts. In addition to these deputies the
Commissioners' Court has employed a

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

'special livestock deputy' to patrol the ranch
country of the entire county to guard against
livestock theft and apprehend persons who
might be guilty of livestock theft. It is
admitted that a serious need exists for such
officer, and our only question is whether or
not he may legally be employed and paid as
aforesaid.

"Art. 7155A, Revised Civil Statutes,
has not been given effect in Pecos County
by petition or election.

"Enclosed herewith you will find copy
of letter brief on the above question I have
today submitted to the Honorable W. P. Rooney,
County Auditor, Fort Stockton, Texas."

This department has heretofore ruled on a question
similar to the one presented in your inquiry. However, this
opinion involved the employment of a special officer work-
ing in four counties to apprehend cattle thieves instead
of one county. This opinion is No. 0-241 and holds:

"The commissioners' court has no
authority to pay out of county funds money
for the employment of the special officer
working in four counties to apprehend
cattle thieves. Article 7155a, R.C.S.,
11 Texas Jurisprudence, page 562-566, inc.
Such office does not exist at law and the
commissioners' court is without authority
to create such office."

In your letter to the County Auditor of Pecos
County, bearing date July 16, 1941, you refer to Article
6869, Vernon's Annotated Civil Statutes, relative to the
appointment of deputies by the sheriff. The number of
deputies to which the sheriff is entitled is fully dis-
cussed in our Opinion No. 0-12, a copy of which we are
enclosing for your information. This Opinion holds that
Article 6869, has been superseded and that the appoint-
ment of deputy sheriffs is in the sound discretion of the
commissioners' court under Article 3902, using the follow-
ing language:

"The department is not in possession
of definite decision affecting the question
on hand, and therefore must arrive at the
conclusion that Article 6869 * * * which
applies to the sheriffs under the Fee Law,
has been superseded * * * by Article 3902,
* * * and by the Officers' Salary Law of the

Honorable Maurice R. Bullock, Page 3

State of Texas.

"* * *it rests within the discretion of
the Honorable Commissioners' Court of Galveston
County, Texas, as to the number of deputies
which the sheriff should employ."

The following quotation is found in the case of
Tarrant County vs. Smith, 81 S.W. (2d) 537:

"The commissioners' court can limit the
number and salary of deputy sheriffs, but they
have no power over the naming of the individuals
to be appointed, and are especially prohibited
from attempting any such last named influence.
Article 3902."

Article 7155a, Vernon's Annotated Civil Statutes
provides in part as follows:

"Section 1. In all counties in this State
having ten thousand (10,000) or more cattle,
sheep, and goats rendered for taxation, the qual-
ified voters of such county may, as herein-
after provided, employ additional assistance
to the law enforcement officers of such county
as hereinafter provided.

"Upon the petition of ten (10) per cent
of the qualified voters of such county, pre-
sent to the Commissioners' Court in open
Regular Session, requesting such Court to
order an election to be held in such County
to determine whether or not said Court, when
acting as a Board of Equalization in such
County, shall levy, and cause to be
assessed and collected an annual tax not
to exceed one (1) cent per head on all
sheep and goats and not to exceed five
(5) cents per head on all cattle, within
such County; said Court shall order such
election to be held within such county,
in accordance with the petition therefor;
* * *"

"Section 2. All moneys assessed and
collected by the Assessor and Collector
of Taxes for each County of this State as
provided for in Section 1 hereof, shall be
paid by said Collector unto the County

Treasurer of such County, and said Treasurer
shall deposit said moneys to a fund to be
known as 'The Domestic Livestock Protective
Fund' and such moneys shall never be expend-
ed for any other purpose than is herein pro-
vided.

"Section 3. To aid in the enforcement of
all the Penal Laws of this State and in
ferreting out and detecting any violations
thereof, it shall be the duty of the Com-
missioners' Court of such County adopting the
provisions hereof, and they are hereby authorized
and required to employ for such service, in
addition to the officers now provided for by
law, as many other competent and discreet
persons as, in the judgment of said Court, is
deemed necessary for said purposes, and shall
fix their compensation; provided however, no
such person, or persons, shall be paid in
excess of Five Dollars ($5) per day, while in
actual service; and provided further that
at no time, shall the moneys expended in the
payment of such person, or persons, for
services, exceed the amount of money collected
therefor. Such Court shall designate the
duties to be performed by all such persons and
shall require them to make monthly reports
in writing to said Court as to the manner in
which they have performed such duties."

It is stated in your letter, in effect, that Article
7155a, supra, has not been given effect in Pecos County by
petition and election. Therefore, said County would have
no authority to employ any person, or persons in addition to
the officers now provided for by law, for the purposes set
forth in said statute.

In view of the foregoing statutes and authorities
you are respectfully advised that it is the opinion of this
department that the Commissioners' Court of Pecos County
has no legal authority to employ a "special livestock
deputy", whose duty shall be confined to protecting
livestock in Pecos County from theft. With reference to
the number of deputies the sheriff may appoint with the
consent and permission of the Commissioners' court is
discussed in our Opinion No. O-12. We are also enclosing
a copy of our Opinion No. O-241 for your information.

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JUL 29, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

By *Ardell Williams*

Ardell Williams
Assistant

AW:eaw

